[Civ. No. 12148.  Second Appellate District, Division One.—December 13, 1940.]

FRANK R. MARTIN, Appellant, v. FOX WEST COAST THEATRES CORPORATION (a Corporation) et al., Respondents.

926

Nat A. Rosenstein for Appellant.

Sidney A. Moss for Respondents.

WHITE, J.—Plaintiff commenced this action to recover damages for personal injuries allegedly sustained as a result of the negligence of defendants. Epitomizing the facts as disclosed by the record, it appears that defendants operated a theater on North Figueroa Street in the City of Los Angeles and in connection therewith maintained a parking lot adjoining the north side of the theater for the convenience and use of the theater patrons. On the evening of December 26, 1937, at about 5:30 o'clock, plaintiff, accompanied by his

wife, drove in an automobile to defendants' theater, and prior to entering as a patron parked his automobile in the aforesaid parking lot. The surface of the lot is covered with gravel and extends easterly about 150 feet farther from the street than do the north and south walls of the theater. In this connection it is contended by defendants that the portion of the lot extending easterly from the north and south walls of the theater building was not part of the parking facilities, but was reserved exclusively for the private use of the theater management. This contention hereinafter will be referred to and answered.

At the northeast corner of the theater building is an emergency exit and ramp extending easterly from the rear of the theater, the threshold of the emergency exit door being about four feet below the ground level at the rear of the theater as well as four feet below the level of the adjoining parking lot. This ramp is of cement construction, about 18 feet long and approximately six feet wide, with retaining walls on each side. On the northerly side of the ramp, adjoining the parking lot, the retaining wall rises above the ground about six inches. Such retaining walls of the ramp were not equipped with any guard rails or other safety devices for the protection of anyone who might venture near it. The parking lot was operated by defendants as a free auto park for the patrons of the theater, and the admission charge to the theater included parking privileges. The north and rear walls of the theater building contained five electric floodlamps with porcelain-lined reflectors, each reflector and lamp being mounted on an iron pipe standard with a goose-neck top, reflecting the light downward. Four of the lamps were on the north wall roof about 27 feet above the ground level of the parking lot and were spaced at intervals ranging from the front of the theater respectively 33 feet, 73 feet, 109 feet and 149 feet. The floodlamp on the rear wall was placed directly over the south retaining wall of the ramp.

When plaintiff drove into the auto park he stopped his automobile a short distance from the rear end of the north wall, with the front bumper near such wall, purchased tickets of admission for his wife, son and himself, and attended the performance at the theater. At the time he parked his automobile it was raining. At the conclusion of the performance, about 8:30 P. M., plaintiff left his wife standing in front of

the marquee in front of the theater and proceeded to the parking lot to get his automobile. At that time only one of the floodlights was lighted, the same being 33 feet from the front of the theater. While walking in the auto park to obtain his automobile, plaintiff stepped into puddles of water, and because of the darkness passed by the rear of his automobile to one parked adjacent thereto, which car was parked at a right angle to the north wall and straddling an imaginary line extending from the rear wall of the theater building close to the northerly side of the retaining wall of the ramp. After he had proceeded around and alongside of the left door of the last-mentioned automobile he discovered the door was locked, and then realized he had mistaken this automobile for his own. He then attempted to pass in front of this automobile to reach his car, which was parked next to it. While so doing he fell into the unguarded and unlighted exit ramp and passageway, descending to the floor of the ramp, thereby sustaining serious injuries.

Trial was had before the court sitting with a jury. At the conclusion of the testimony defendants moved the court for a directed verdict in their behalf on the ground that there was no evidence of negligence upon their part, and further, that the evidence proved that as a matter of law plaintiff was guilty of contributory negligence which proximately contributed to his injuries. This motion was granted, and pursuant to the court's direction the jury returned a verdict in favor of defendants. From the judgment entered upon such verdict plaintiff prosecutes this appeal.

Respondents do not seriously deny negligence upon their part by reason of the manner in which the ramp was maintained without safety guard rails and with meager lighting in and about such open space. To sustain the judgment respondents rely, first, upon what they claim is as a matter of law contributory negligence upon the part of appellant.

■ Before giving consideration to this claim, we are disposed to consider respondents' contention that appellant, with reference to the spot where the accident happened, was a licensee rather than an invitee, and that they did not in any way violate the duty owed appellant as such licensee, in that they were free from any conduct which wilfully inflicted injury upon him. This contention rests upon the claim that the parking facilities ended at the rear wall of the theater,

and that the invitation of the theater management did not extend to that portion of the premises easterly of the building.

It is true that one may be an invitee upon a certain portion of the premises of another for a proper purpose, and yet may become a mere licensee on other portions of the property, dependent upon the particular circumstances of the case (*Medcraft* v. *Merchants Exchange*, 211 Cal. 404, 407 [295 Pac. 822]; *State Compensation Insurance Fund* v. *Allen*, 104 Cal. App. 400, 413 [285 Pac. 1053]); but the circumstances surrounding the present case are not such as to warrant the conclusion that appellant at any time occupied a status other than that of invitee. The record is barren of any evidence which indicates the presence of any fence, barrier, or notice by which the use of the rear portion of the premises was reserved to the theater management; while the manager of respondents' theater testified to the absence of any such barrier or notice; and further, with reference to the use of the questioned portion of the premises for parking purposes, such witness testified as follows:

"Q. By Mr. ROSENSTEIN (Plaintiff's counsel): Now, you say the parking area as exhibited in Defendants' Exhibit C, I believe—the map on the diagram, on the blackboard, rather—cars parked, do they not, east of the rear wall of the parking space?

"A. At times now, yes, sir.

"Q. And on December 26, 1937, they parked there, did they not?

"A. Probably there were times when they parked back beyond the end of the building, but very rarely.

"Q. But they parked there, however?

"A. Yes.

"Q. By the COURT: You are speaking of the night of December 26th?

"A. Yes, sir.

"Q. By Mr. ROSENSTEIN: And there was no fence or barrier extending from the east or rear wall of the theater building north on the parking lot?

"A. No, sir."

It cannot, therefore, reasonably be held that as to the rear portion of the premises appellant was not invited but merely tolerated, but rather must be assumed that in entering upon such portion of the parking lot, he did so as the in-

vitee of respondents and at least with their implied, if not express, authority. Respondents were therefore bound to exercise reasonable care in providing a safe place for his protection while thereon as such invitee. ■ We conclude, and respondents do not with any vehemence challenge the conclusion, that the record contains substantial proof of the negligence of defendants in failing to provide reasonably prudent means of warning the plaintiff against the imminence of danger or of protecting him by guard rails or otherwise against falling into the ramp.

We come now to a consideration of respondents' contention that appellant ventured into unknown territory in utter darkness and was therefore guilty of contributory negligence as a matter of law. This claim is predicated upon the testimony given by plaintiff, who was the sole witness to the accident. In substance, the pertinent portion of his testimony was that on leaving the theater at about 8:30 in the evening he went safely and without difficulty through the parking lot to the left front door of the car he mistook for his own. In getting to that portion he passed through a shallow puddle of water behind such automobile. When he got to the driver's seat and found the door locked he realized he had approached the wrong car. But he was aware of the fact that his own car was to the west of the automobile which he mistook for his own. Instead of retracing his steps, not wishing to step through the puddles of water, he proceeded along the left side of the automobile toward the front thereof, feeling his way because it was so dark that he could not see in front of him. He then turned to the right in front of the car, keeping his hand on the fender and later on the radiator as he attempted to pass between the car and what proved to be the northerly side of the ramp wall. For the most part he looked westward toward the exit of the parking lot. The witness further testified that it was "very dark". As he moved along attempting to pass between the north wall of the theater and the front end of the other automobile and toward his own, he stepped off and into the ramp.

■ In determining the presence or absence of negligence, the test is not what others would have done in that regard, but, rather, what would a reasonably prudent person do under similar circumstances. (*Wolfsen* v. *Wheeler*, 130 Cal. App. 475, 483 [19 Pac. (2d) 1004].) The question for decision,

therefore, is, would a person situated in appellant's position, possessing ordinary prudence, knowing what he knew, and seeing what he was able to see, have used greater caution than he used, and instead of going around the front of the parked automobile have retraced his steps in the direction from which he had come without mishap; or would the average person, presuming on the safety of travel upon the ground of the parking lot, probably have acted as did appellant?

■ Unless we can say from a review of the evidence, disregarding the fact that there may be a conflict therein, and giving full credit only to that portion of the evidence, whether produced by plaintiff or defendant, which tends to support the allegations contained in plaintiff's complaint, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of plaintiff if such verdict were given, then under the well established rules and settled law of this state, we must reverse the judgment herein, based as it is upon a verdict directed by the court. (*Estate of Flood,* 217 Cal. 763, 768 [21 Pac. (2d) 579]; *Estate of Lances,* 216 Cal. 397 [14 Pac. (2d) 768].) ■ Where different conclusions may be reasonably drawn by different minds from the same evidence, the decision must be left to the triers of fact. ■ And in the instant case it is clear to us that whether the situation in which he found himself was such as to impress upon the mind of appellant the danger incident to going around the front end of the parked automobile, was for the jury to decide as an issue of fact. ■ The question of contributory negligence is always one of fact for the jury to decide under proper instructions, except in those cases in which, judged in the light of common knowledge and experience, there is a standard of prudence to which all persons similarly situated must conform. It is only in these last-named cases that failure to adhere to that common standard is as a matter of law contributory negligence. We are not unmindful of respondents' claim that appellant was negligent in feeling his way around the automobile on the parking lot in the darkness and falling into the ramp; but the answer to this contention is that the jury might well and reasonably have found that the presence of appellant in the area of danger was due to the negligence of respondents in failing to provide suffi-

cient illumination of the parking lot at and near the retaining walls and open ramp. The lack of adequate illumination might well have been held by the jury to be the efficient and proximate cause of appellant's injury. True, respondents may argue that the fact of insufficient illumination was as obvious to appellant as it was to respondents, and that if they were negligent he was equally so and is therefore barred from a recovery. If the jury had so found, such an argument might prevail, but that is not the case, and we are asked to hold that appellant, in acting as he did, was negligent as a matter of law. This we cannot do, because we feel that reasonable people might well differ on the question whether a man situated as appellant was, seeing what he was able to see and knowing what he knew, would have proceeded as he did, or as suggested by respondents, would have returned by the same route he had traversed in coming around from the rear of the automobile in the first place. The motion for a directed verdict should not have been granted.

The attempted appeal from the verdict is dismissed.

For the foregoing reasons, the judgment is reversed and the cause remanded for a new trial.

York, P. J., and Doran, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 10, 1941.